UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-80160-Cr-Rosenberg/Brannon

UNITED STATES OF AMERICA,

vs.

PATRICK TURNER,

Defendant.
_______________________________/

**REPORT RECOMMENDING THAT DEFENDANT'S MOTION TO SUPPRESS BE DENIED**

THIS CAUSE is before the Court on Defendant's Motion to Suppress Physical Evidence and Statements (DE 24), to which the Government has responded in opposition (DE 33). The Court held an evidentiary hearing on November 18, 2015 (DE 34). For the reasons that follow, the Court RECOMMENDS that the Motion to Suppress be DENIED.

## I. BACKGROUND

Defendant Patrick Turner is charged by Indictment (DE 17) with a single count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (DE 17). This charge stems from a warrantless search of Defendant about an hour after midnight on July 25, 2015, during which officers seized a loaded firearm from Defendant's pants pocket. Defendant now seeks to suppress all evidence and statements obtained on grounds that his search and seizure was unlawful.

Defendant and counsel for both sides were present at the evidentiary hearing. The Government called two witnesses, Officer Jerrel Negron of the West Palm Beach Police Department ("WPBPD") and WPBPD Officer Stephen Mooney. The Government also

introduced six exhibits without objection: (1) four photographs depicting the location where Defendant was searched on the night in question (Govt. Exs. 1-4), (2) Defendant's audio and video recorded statements to Officer Negron at the WPBPD, taken on July 25, 2015 (Govt. Ex. 5), and (3) a transcript of these recorded statements by Defendant (Govt. Ex. 6; DE 33-1). Defendant called one witness, Cornelius Daniels.

The two WBPD Officers testified consistently to one version of events on the night in question, while Mr. Daniels' testimony offered a different version of the same events. The Court finds that all three witnesses who testified did so truthfully, about what each honestly believed to have happened that night. The Court finds the following credible facts from the testimony and exhibits introduced at the hearing. In making the following factual findings, the Court will point out and resolve any inconsistencies or discrepancies in the witness testimony.

About an hour after midnight on July 25, 2015, three WPBPD Officers—Negron, Mooney, and Ruiz—were traveling in an unmarked police vehicle in the area of 9th Street and North Tamarind Avenue. Officer Mooney drove, with Officer Ruiz as his front-seat passenger and Officer Negron seated in the back seat. The Officers were patrolling this West Palm Beach neighborhood as part of their assignment to an Anti-Crime Unit that had been set up in response to recent shootings and homicides in the area. The vehicle was unmarked, but the Officers all wore black tactical vests with "POLICE" written in large, white letters on the back and front of the vests.

After observing a group of three men near some parked cars in an alley between 9th and 10th Streets, the Officers drove west-bound into the alley at a slow speed with their

vehicle headlights on. The vehicle stopped behind 1009 9th Street—a single-story, multi-unit building containing a small number of apartments and a common parking lot.

That night, immediately behind the building at 1009 9th Street, three cars were parked on the south side of the alley. There was a street light in the alley, west of 1009 9th Street that was lit but of uncertain illumination. As the Officers approached, the three men were clustered around the westernmost of the three parked cars. Two of the three men—Mr. Hicks and defense witness Mr. Daniels—were located near the rear of that last car, which was parked rear-facing against 1009 9th Street. The third individual—Defendant Mr. Turner—was leaning against the westernmost car, with his forearms resting on the roof, facing east.

After the Officers exited their vehicle to approach the three other men, Mr. Hicks flinched, ducking his shoulder toward the ground. There is no evidence that he squatted on the ground. Mr. Hick's movement caused the Officers to be concerned, causing Officers Mooney and Ruiz to draw their weapons while ordering Mr. Hicks to stand up and show his hands. Officer Negron came up behind Defendant, who was the closest to the alley of the three individuals. As Officer Negron moved directly behind Defendant, within arm's reach of him, he observed the butt of a gun protruding from Defendant's right front pocket. At that point, Defendant told Officer Negron that he, Defendant, had a gun on his person. That firearm is the subject of this case. In addition to his spontaneous statement, Defendant gave other statements, both before and after receiving his Miranda warnings.

With respect to the above factual narrative, all three witnesses agreed that the events happened quickly, "within seconds" or "split seconds" and that the period from stop to arrest was five minutes, which included running a police check as to whether Defendant had a criminal record. The witnesses disagreed, however, about (1) the locations of Defendant and

the other two individuals when they were encountered by the Officers, (2) whether the unmarked police vehicle's headlights were on, (3) whether the street light was on, (4) whether Officer Negron had and used a flashlight during the encounter, (5) how Mr. Hicks moved when the police arrived on scene, (6) when and which officers drew their weapons, (7) the number of Officers, (8) whether the gun was in Defendant's waist band or pocket, and (9) whether Defendant spontaneously stated he had a gun on his person. The Court resolves these disagreements as follows.

The Court credits Mr. Daniels testimony with respect to the location of Mr. Daniels, Mr. Hicks and Defendant. All three witnesses put Mr. Daniels and Mr. Hicks in the same location. Officer Negron testified that Defendant was between the middle and the westernmost parked car, while Mr. Daniels testified that Defendant was leaning on the west side of the westernmost car. Mr. Daniels seems more correct as to the position based on the fact that Mr. Daniels, Mr. Hicks and Defendant were talking together, and it would be odd to have Defendant with his back to two men he was talking with. Further, Officer Negron would have had to squeeze between the two parked cars to get behind Defendant. The Court finds that Officer Negron was truthful, but most likely wrong in his location description. This fact does not change the outcome.

The Court credits the testimony of Officers Negron and Mooney with regard to lighting in the area. More specifically, the Court finds credible these Officers' testimony that the police vehicle headlights were on, that the nearby street light was on, and that Officer Negron used his flashlight to illuminate the area. The Court believes the street light must have been putting out some light if the officers were able to see anyone in the alley in the first place. (Note locations in Govt. Ex. 1). The same is true regarding Officer Negron's use of a

flashlight. The Court further believes that anyone would be highly suspicious of any unmarked car approaching them at slow speed without headlights after midnight. Many prudent persons would depart or alert or move in some way. No witness testified that anybody moved as the car approached. Thus, the Court finds that the headlights, street light, and Officer Negron's flashlight were on.

The Court credits all three witnesses about Mr. Hick's actions. Officers Negron and Mooney testified that he ducked (not squatted) down, and Mr. Daniels indicated, primarily using body language at the hearing, that Mr. Hicks flinched, lowering his right shoulder. It was enough of a move to be noticed by all concerned.

The Court credits Officers Negron and Mooney regarding the drawing of guns. The two Officers are most likely to have drawn their weapons after Mr. Hicks moved, and it was a reasonable judgment call of Officer Negron to keep his weapon holstered since Mr. Hicks apparently just flinched. The fact that Officer Negron's weapon was holstered is also consistent with Officer Negron's testimony that he was holding a flashlight during the entire encounter with the three individuals. The Court does not believe that the only reaction would have been a flinch by Mr. Hicks if Mr. Daniels, Mr. Hicks and Defendant would have observed three or four men darkly dressed exit a darkened vehicle with no lights and guns drawn.

The Court believes Mr. Daniels simply made an honest mistake about there being a total of four Officers at the scene. There was no evidence of a fourth officer.

The Court believes Officer Negron observed the gun in Defendant's pocket and that Defendant spontaneously stated that he had a gun. An examination of the transcript from the post-arrest interview of Defendant at WPBPD (Govt. Ex. 6), indicates a certain mutual respect

between Defendant and the Officers, based upon Defendant's honest statements about the gun, apparently made to keep a bad situation from getting worse. This is evidenced by the following conversation between Officer Negron and Defendant:

> Negron: "You've been straight with me, I'll be straight with you bro"
> Defendant: "That's real."…
>
> [Officers return phone to Defendant]
>
> Defendant: Yeah he said he gonna let me call whoever I want to call.
> Negron: Okay, no problem.
> Defendant: He said cause I kept it honest with him the whole time.
> Negron: Yeah yeah yeah yeah man, honesty goes a long way.

(Id. at 1-2). This pre-Miranda, post-arrest conversation illustrates the situation as Officer Negron described it: Defendant was a man who was honest enough to admit that he had done wrong. Against the above factual backdrop, the Court will address Defendant's suppression arguments.

## II. ANALYSIS

Defendant now moves to suppress all physical evidence and statements deriving from what he contends was an unconstitutional search and seizure. Defendant argues he was unlawfully detained and frisked without any reasonable suspicion to believe that he had committed or was committing a crime, and without any reasonable basis to believe he was armed.

The Fourth Amendment prohibits "unreasonable searches and seizures," and evidence seized in violation of the Fourth Amendment must be suppressed. U.S. Const. amend. IV; Terry v. Ohio, 392 U.S. 1, 12 (1968); U.S. v. Gilbert, 942 F.2d 1537, 1541 (11th Cir. 1991). Searches "outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established

and well-delineated exceptions." Katz v. U.S., 389 U.S. 347, 357 (1967). Among the limited exceptions to the rule against warrantless searches and seizures are investigatory stops. Illinois v. Wardlow, 528 U.S. 119, 675 (2000) (citing Terry, 392 U.S. at 30).

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Wardlow, 528 U.S. at 675 (citing Terry, 392 U.S. at 30); see also U.S. v. Franklin, 323 F.3d 1298, 1301 (11th Cir. 2003). "[I]n evaluating the constitutionality of an investigatory stop, the court must examine 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" U.S. v. Powell, 222 F.3d 913, 917 (2000) (quoting Terry, 392 U.S. at 27).

"[R]easonable suspicion is a less demanding standard than probable cause and requires as showing considerably less than preponderance of the evidence." Wardlow, 528 U.S. at 123. Even so, it must be more than an "inchoate and unparticularized suspicion or hunch." Terry, 392 U.S. at 27. "The officer must have 'some minimal level of objective justification' taken from the totality of the circumstances." Powell, 222 F.3d at 917 (quoting U.S. v. Sokolow, 490 U.S. 1, 7–8 (1989)). Reasonable suspicion "does not require officers to catch the suspect in a crime. Instead, [a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." U.S. v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004); see also U.S. v. Lee, 68 F.3d 1267, 1271 (11th Cir. 1995) ("None of the suspect's actions need be criminal on their face, yet taken together, they can provide trained police with reasonable suspicion.").

Here, as a preliminary comment, the Court notes that the search at issue took place at the unfortunate intersection in time when the WPBPD stopped having vehicle dash cameras but before they began to equip their officers with body cameras. According to Officer Negron's testimony, this transition period was the result of WPBPD policy decisions. This is truly unfortunate, as having the cameras would have resolved the most salient issues. Since technology is not available to assist the Court, apparently as a result of WPBPD policy decisions, the Court must rely on more traditional methods of determining credibility.

Having employed such traditional methods, including by careful consideration of the evidence presented at the hearing, the Court arrives at the credibility determinations fully enunciated in the above factual background section. Against this factual backdrop, the Court finds that the search of Defendant was constitutionally permissible because there existed objective reasonable suspicion that criminal activity was afoot. The Officers observed Defendant and two other men standing next to parked vehicles in an alley around 1:00 A.M. in the morning. As the Officers approached, one of the men unexpectedly flinched or moved behind a parked car which caused the officers to prepare themselves for possible violence. It was thus reasonable for two of the three Officers to draw their weapons and attempt a *Terry* stop to neutralize the potential threat of physical harm. It was during this permissible stop that Officer Negron observed a handgun in Defendant's front right pocket and lawfully seized the weapon. Defendant thereafter made spontaneous statements regarding the gun both at the scene and later at the WPBPD where he was interviewed. In light of the foregoing totality of circumstances, the Court finds that the Officers had reasonable, particularized suspicion to seize Defendant and that the firearm seized from Defendant's person and all subsequent statements by Defendant are not the so-called fruit of any poisonous tree.

## III. RECOMMENDATION

Accordingly, the Court respectfully RECOMMENDS that Defendant's Motion to Suppress Physical Evidence and Statements (DE 24) be DENIED.

## IV. NOTICE OF RIGHT TO OBJECT & SHORTENED TIME FOR OBJECTIONS

Given the swiftly-approaching trial period, the Court is shortening the time in which the parties have to file objections and responses. A party shall serve and file written objections, if any, to this Report and Recommendation with U.S. District Judge Robin L. Rosenberg, **within 7 days after being served with a copy**. 28 U.S.C. § 636(b)(1)(C). Any responses to objections shall be filed **within 3 days of the objection**. Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. U.S. v. Warren, 687 F.2d 347, 348 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983).

DONE AND ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 24th day of November, 2015.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE